BANNER DAIRIES, a Corporation,
Appellant,

v.

Otis GEERS, Appellee.

No. 5144.

Court of Civil Appeals of Texas.

El Paso.

April 18, 1956.

Rehearing Denied May 29, 1956.

McDonnell & Shafer, Raymond Stoker, Odessa, for appellant.

Mike R. Mason, Odessa, Stubbeman, McRae & Sealy, Tom Sealy, F. H. Pannill, Midland, for appellee.

HAMILTON, Chief Justice.

Otis Geers, Appellee herein, as plaintiff below sued Banner Dairies, a corporation, defendant below and appellant here, for breach of a written contract. Based upon verdict judgment was entered for Geers. From such judgment Banner Dairies appeal.

The contract which is the subject of the lawsuit is as follows:

"This contract made and entered into this 23rd day of July A.D. 1951, by and

between Banner Dairies, a Texas corporation, hereinafter called the 'seller' and Otis Geers hereinafter called the 'buyer'.

"For a period of five years from date of this contract the buyer agrees to purchase from the seller all of his ice at $7.00 per ton during the months of March, April, May, June, July, August, September and October of each year and $5.00 per ton during the months of November, December, January and February of each year.

"It Is Further Understood and Agreed, That the seller has purchased trucks for the buyer, paying cash for same and has turned over to the buyer said trucks at sellers cost and the buyer hereby agrees to pay to the seller, each day, five cents per hundred pounds on all ice sold direct or indirect by the buyer until the present trucks have been fully paid for plus straight seven per cent interest; thus making a total of $8.00 per ton on all ice purchased during the months of March through October and $6.00 per ton for the months of November through February until the trucks have been paid for together with all accrued interest. It being understood that these daily settlements shall be made unless otherwise satisfactory arrangements shall be made, on ice purchased.

"It Is Further Understood and Agreed, That this contract shall be binding on both parties and that each shall render satisfactory service to the interest of the other party insofar as it is possible; reasonable exceptions accepted only. That the seller and buyer will use reasonable efforts to adjust any differences and in case that no agreement is reached, that the buyer and seller will each select a representative and that the two representatives will select a third party and that their decisions shall be final in any difference that may arise.

"It Is Further Understood and Agreed, That in case of the seller not having all of the ice the buyer needs, that the buyer has the option of purchasing ice from any other source; however the buyer will pay to the seller five cents per hundred pounds of ice until the truck debt has been liquidated in full.

"While the term of this contract, as stated in the outset hereof, is to be five years, it is understood and agreed that the buyer is to be vested with an option to renew this contract for an additional five years from and after its expiration date, upon the same terms, provisions and conditions as incorporated herein, providing both parties satisfied with contract.

"Witness the hands of the parties hereto, the day and year first mentioned above, in duplicate originals.
    "Banner Dairies
    "By /s/ O. D. Dillingham    Seller
        "/s/ Otis Geers              Buyer

"It Is Also Understood and Agreed, That the buyer Otis Geers is to deliver to the Air Terminal, between Midland and Odessa, all ice to seller's dealers and that the buyer shall be allowed five cents per hundred pounds in addition to the regular price by seller to buyer."

Appellee alleged that the contract was breached by appellant but there is no allegation as to in what particular or particulars the contract was breached. Damage was alleged to be $350 per month for the balance of the term for loss of profits. Appellant excepted to appellee's petition for the reason that he did not set out in what particular or particulars the contract was breached. Appellant further answered by general denial and specially that appellant made arrangements for Permian Ice Company to take over appellee's ice routes only after appellee had expressed a desire to give up the handling of ice, and that appellee voluntarily terminated his contract with Banner Dairies.

In answer to Special Issue No. 1 the jury found that the appellant failed to furnish ice to appellee on and after April 1, 1953, and in answer to Special Issue No. 2 the jury answered that such failure on the part of appellant was a material breach of the contract in question. In answer to Special Issue No. 3 the jury found that appellee lost in profits the amount of $5,200 from April 1, 1953 to July 23, 1956 as a result of said breach.

■ The first point appellant raises is that the court erred in rendering judgment for the appellee because the contract sued upon was unilateral and therefore unenforceable. It is our opinion that the contract is enforceable. Although the contract does not specifically say that appellant will sell any amount of ice to appellee, yet from reading the whole content of said contract we think it is reasonable to assume that there was an implied agreement on the part of appellant to sell to appellee at the price stated in the contract whatever ice the appellee might need in his business so long as appellant had sufficient ice available.

■ Appellant's second point complains that the court erred in overruling appellant's special exception to appellee's pleadings on the ground that such pleadings did not state wherein the contract was breached by appellant. We think the special exception was good and should have been sustained. However, there was no objection to any of the evidence or to any issue submitted in the court's charge on the ground that there were no pleadings to sustain it. We therefore are of the opinion that any error committed by the court in failing to sustain said exception was waived by the appellant.

Appellant in his points 3 through 8 complains of the court's rendering judgment for appellee on answers to issues 1 and 2 for the reason 1st, that there was no evidence to support same; 2nd, the evidence was insufficient to support the finding of the jury; 3rd, the answers were so against the great weight and preponderance of the evidence as to be manifestly unjust. The record reflects that at the beginning of this contract Banner Dairies had furnished appellee with two trucks that were to be paid for as outlined in the contract, and that some time afterward appellee bought two more trucks from another man who had been buying ice from the Banner Dairies and selling same on a route. In January 1953 the Banner plant burned, but Banner made arrangements with others to furnish appellee with ice. It appears that during the latter part of 1952 and the early part of 1953 appellee complained to Banner Dairies that he was not making any money, and that he would like to get rid of his ice route. This is borne out by the fact that plaintiff got behind with the government some $800 withholding tax due on his drivers, and that Mr. Dillingham, the president of Banner Dairies, loaned him money to take care of his obligation. It was uncontradicted that the plant manager, the district manager of Banner Dairies and Mr. Dillingham himself made some effort to find somebody that would take over appellee's routes, but were unable to do so until March 1953. It appears that in February Banner Dairies made arrangements with Permian Ice Company, a competitor of Banner Dairies, to take over and deliver ice on appellee's route, beginning March 1, 1953. Appellee permitted Banner Dairies to put a man on each of his trucks for two or three days to learn the routes. It also appears that upon request of the appellee in order for him to collect money owed him by some of his drivers, the time for turning over the routes was extended from March 1st to March 15th, and when March 15th came a further extension of fifteen days was agreed upon at the request of appellee. No further requests were made by appellee for ice. On March 31st the Permian Ice Company took over the routes and started delivering ice.

■ Appellee contends that after hearing that Banner Dairies was going to lease its ice plant to a Mr. Peay, who was then the District Manager for Banner Dairies, he called Mr. Dillingham and asked him

how he would be affected, and the reply was "Have you renewed your contract with Mr. Peay?" His answer was "No", his reason being that he did not have a contract with Mr. Peay. Appellee testified further that when he found out that the plant was to be leased to Mr. Peay when the new plant was finished and he had not been taken care of, that he figured his contract was broken. He testified that when he was told by Mr. Peay that the Permian would take over the ice routes on March 1st or 15th, that he did not tell Mr. Peay he had a contract and was going to demand that it be carried out, for the reason that he didn't know what he could do. He never at any time made any demand on Mr. Dillingham, Mr. Peay, or the plant manager, Mr. Guinnell, that they furnish him ice according to his contract, while he knew that Banner Dairies had made arrangements for taking over his route at least thirty days before appellee stopped delivering ice. In our opinion, under this state of facts the evidence was insufficient to show a breach of contract on the part of appellant. While appellee had agreed to purchase all his ice from the Banner Dairies, and as we have held above, we think Banner Dairies impliedly agreed to sell appellee all of his ice so long as they had a sufficient supply, we think in the absence of appellee agreeing to buy a particular amount of ice and appellant agreeing to sell a particular amount, that appellant could only become liable to appellee for failing to furnish ice after definite demand had been made upon appellant to furnish it. No demand was ever made by appellee for ice on or after April 1st, 1953. No objection was made when the route was turned over to the Permian Ice Company. We think that the failure of appellant to furnish ice to appellee, under this state of facts, was insufficient to constitute a breach of the contract on the part of appellant.

Appellant in his 10th point complains of the court submitting the issue of damage in the manner that it did. It is true appellee should have been required to show first that he was unable to obtain ice from any other source before he could base his damages on the amount of profits lost for the remainder of the term. In this case there was no such showing, but since the appellant made no objection to this issue as submitted by the court, we think it is too late to complain on appeal.

All other points of appellant are overruled, and the judgment of the trial court is reversed and the cause remanded for a new trial.